UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| KAREN DRYDEN, <br><br> Plaintiff, <br><br> v. <br><br> ACCREDITED COLLECTION AGENCY, INC. *et al.*, <br><br> Defendants. | Civil Action No. 3:14-CV-255 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's Motion and Memoranda in Support of Entry of Default Judgment and Attorney Fees ("Motion") (ECF No. 16). Defendants, Accredited Collection Agency, Inc. ("ACA") and Jeff Winters ("Winters"), have not responded to this Motion nor any prior motion filed in this matter, and the deadline to respond has passed. For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

### I.   BACKGROUND

#### a.   *Factual Background*

All of the following facts are drawn from Plaintiff's Complaint, as Defendants have not responded to the Complaint. In approximately November 2012, Plaintiff Karen Dryden ("Dryden" or "Plaintiff") was contacted by the named Defendants in an attempt to collect a consumer debt she allegedly owed. Defendants began calling Dryden at her place of employment. On December 5, 2012, Dryden's employer advised Defendants that such calls to Dryden were prohibited under the company's policies. Defendants, however, continued to call Dryden at her place of employment, occasionally screaming at her in their efforts to extract payment.

Unable to stop Defendants' calls her to place of employment, Dryden obtained counsel

with Centennial Law Offices. On February 8, 2013, staff from Centennial Law Offices contacted Defendants and advised them that Dryden was represented by counsel. On April 1, 2013, staff from Centennial Law Offices contacted Defendants a second time to obtain information on the debt Dryden allegedly owed. Defendants were provided with contact information for Dryden's counsel.

On April 9, 2013, Defendants left a voicemail for Dryden on her work number, the content of which is substantially as follows:

> This is Daisy King calling from ACA Recovery. When you get the message would you please give me a call 201-670-8851. Your reference number is 99GHSJ and I will try for your cellular. Thank you.

On October 7, 2013, Defendants left a voicemail for Dryden on her work number, the content of which is substantially as follows:

> This is an important message for Karen Dryden. My name is Gary James. I'm calling from the company known as ACA Recovery now United Credit Specialist. I'm calling in reference to Mypayday Loan. Okay, there's a balance here $132.50. According to what I'm looking here, you already paid nearly all the way off, okay. Please return my call okay. Let's discuss this. Like I said, my name is Gary James. My number is 800-356-3713. And when you call, it's very important that you refer to reference ID number 99GHSJ. Thank you very much.

Additionally, Defendants added $50.00 in "fees" to the principle amount Dryden allegedly owed on the debt.

### b. *Procedural Background*

On April 14, 2014[1], Plaintiff filed her Complaint against six named Defendants[2] alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). On October 2, 2014, the Clerk entered a Notice of Abatement (ECF No. 5), which gave Plaintiff fifteen days to show the Court good cause why the defendants had not been served within 120 days of the filing of the Complaint. On October 15, 2014, two summonses were returned executed on ACA, who was

---

[1] Although Plaintiff's Complaint was not docketed until April 14, 2014, Plaintiff filed a motion for leave to proceed in forma pauperis ("IFP") on April 9, 2014, with her Complaint attached. The filing of the motion to proceed IFP should be deemed to commence the action. *See* 28 U.S.C. § 1915(a).
[2] The six Defendants included ACA and Winters as well as Daisy King, Gary James, United Credit Specialist and Does 1-5. The four latter Defendants were terminated on November 14, 2014, and are not addressed in the present Motion.

served on June 5, 2014, and Winters, who was served on June 17, 2014. Subsequently, default was requested as to ACA and Winters on October 21, 2014 (ECF Nos. 8, 9) and was entered against both defendants on October 30, 2014 (ECF Nos. 10, 11).

On November 7, 2014, Plaintiff filed an Amended Complaint (ECF No. 12), which was dismissed by this Court *sua sponte* for failure to comply with Rule 15 of the Federal Rules of Civil Procedure (ECF No. 13). Plaintiff subsequently sought leave to file an Amended Complaint (ECF No. 14), but that request was denied because Plaintiff again failed to satisfy Rule 15 (*see* ECF No. 15).

On May 6, 2015, Plaintiff filed the instant motion requesting the entry of default judgment against Defendants ACA and Winters. She seeks actual and statutory damages as well as attorney's fees and costs.

## II.   LEGAL STANDARD

Obtaining default judgment is a two-step process. First, the Clerk of the Court must enter default. "Entry of default is an interlocutory order – entered in anticipation of a final judgment – formally recognizing that a party 'has failed to plead or otherwise defend as provided by [the Federal Rules of Civil Procedure].'" *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004) (quoting Fed. R. Civ. P. 55(a)). The second step is the actual default judgment, which is "a final disposition of the case and an appealable order that has the same effect as a judgment rendered after a trial on the merits." *Id.* (internal citation and quotation marks omitted).

Rule 55 of the Federal Rules of Civil Procedure governs default judgment. The Rule provides "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After the Clerk enters default, the Clerk or the Court may enter default judgment. The Clerk enters default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation. . . ." Fed. R. Civ. P. 55(b)(1).

3

In all other cases, the Court enters default judgment. Fed. R. Civ. P. 55(b)(2). The Court can "conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.*

Default judgment is warranted if a defendant fails to plead or otherwise defend itself. *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). The party requesting default judgment must show:

> (1) when and against what party the default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the defendant is not in military services; and (5) that notice has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2)."

*JTH Tax, Inc. v. Smith*, No. 2:06CV76, 2006 WL 1982762, at *1 (E.D. Va. June 23, 2006).

## III.   **DISCUSSION**

### (i)   Default Judgment

Accepting the well-pleaded factual allegations in the complaint regarding liability as true, Plaintiff sufficiently alleges all of the elements needed to satisfy an FDCPA claim against ACA. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (requiring a court considering a default motion to determine whether a plaintiff's well-pleaded allegations support the relief sought). "In order to prevail on a FDCPA claim a Plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debtor [sic] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Dikun v. Streich*, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005) (citation omitted).

As to the first element, "a consumer debt is defined as an obligation or alleged obligation 'to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]'" *Finney v. MIG Capital Mgmt., Inc.*, No. 2:13-02778, 2014 WL 1276159, at * (S.D.

W. Va. Mar. 27, 2014) (quoting 15 U.S.C. § 1692a(5)). In her Complaint, Plaintiff alleges that "[i]n approximately November of 2012 Defendants began contacting Ms. Dryden in an attempt to collect a consumer debt she allegedly owed." (Compl. ¶ 7.)

For the second element, the FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, "[o]fficers are not liable under the FDCPA solely by virtue of the offices that they hold." *Thomas v. Finneran*, No. 7:09CV00354, 2009 WL 2588348, at *1 (W.D. Va. Aug. 20, 2009). Rather, a plaintiff must allege "specific factual support for the allegation that the corporations' officers . . . themselves engaged in activities that would qualify them as debt collectors under the FDCPA." *Id.* Here, the Complaint alleges that (1) ACA is a New Jersey corporation and Jeff Winters is the chief executive officer of ACA, (Compl. ¶ 3); (2) Defendants used the telephone to engage in debt collection, (*id.* at ¶¶ 8, 9, 12, 13); and (3) "Defendants regularly operate as third-party debt collectors and are 'debt collectors' as defined by 15 U.S.C. 1692a," (*id.* at ¶ 6.) Although Plaintiff's Complaint sufficiently alleges that ACA is a debt collector, Plaintiff has not sufficiently alleged that Winters himself is a debt collector. Instead, Plaintiff apparently relies on the fact that Winters is the chief executive officer of ACA, and thus imputes liability to him. (*See* Compl. ¶ 3.) Pursuant to *Finneran*, 2009 WL 2588348, at *1, because Plaintiff did not allege specific factual support that Winters himself is a debt collector,[3] the Motion is DENIED as to Winters.[4]

---

[3] To be sure, the Complaint only notes voicemail messages from Daisy King and Gary James. (Compl. ¶¶ 12, 13.) The Complaint is factually devoid of any actions taken specifically by Winters.

[4] Plaintiff cites multiple out-of-circuit cases in support of her proposition that Winters, as the chief executive officer of ACA, can be a "debt collector" as that term is defined in the FDCPA. (*See* Mot. at 9.) However, Plaintiff's cited cases do not dispute the holding in *Finneran*. Indeed, the cases affirm that although "[a] high ranking employee, executive or director of a collection agency may fit within the statutory definition of a debt collector," the plaintiff must still "allege that the defendant was *personally involved* in the collection of the debt at issue." *Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999) (emphasis added).

Third, the Complaint alleges five violations of the FDCPA, each of which will be discussed in turn. Count One of Plaintiff's Complaint alleges violations of 15 U.S.C. § 1692c(a)(2)[5] as Defendants "continu[ed] to make collection calls to Plaintiff after having actual knowledge that Plaintiff was represented by counsel and having the means to contact Plaintiff's counsel." (Compl. ¶ 16.) On February 8, 2013, Centennial Law Offices contacted Defendants and advised them that Dryden was represented by counsel. (*Id.* at ¶ 11.) On April 1, 2013, Centennial Law Offices contacted Defendants again and Defendants were provided contact information for Dryden's counsel. (*Id.*) The Complaint alleges that Defendants continued to place collection calls directly to Plaintiff, with messages having been left on April 9, 2013 and October 7, 2013. (*Id.* at ¶¶ 12, 13.) Accordingly, Defendants violated 15 U.S.C. § 1692c(a)(2).

In Count II, Plaintiff alleges that Defendants violated 15 U.S.C. §§ 1692d(6)[6] and 1692e(11)[7] "by failing to disclose that their communications were from a debt collector and being made in an attempt to collect a debt." (Compl. ¶ 17.) 15 U.S.C. § 1692d(6) provides that a debt collector violates the section by placing telephone calls "without meaningful disclosure of the

---

[5] 15 U.S.C. § 1692c(a)(2) states,

    (a)  Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –
    (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer . . . .

[6] 15 U.S.C. § 1692d(6) states,

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
    (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

[7] 15 U.S.C. § 1692e(11) states,

    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
    (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

caller's identity." "'Meaningful disclosure' has been held to require the debt collector 'to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business.'" *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *10 (D. Md. Mar. 25, 2013) (citation and internal quotation marks omitted). 15 U.S.C. § 1692e(11) provides that a debt collector violates the section in part by failing to disclose "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." From the voicemails noted in the Complaint, (Compl. ¶¶ 12, 13), Defendants did not meaningfully disclose their identity or the nature of the calls.

Count III of Plaintiff's Complaint alleges violations of 15 U.S.C. § 1692d as Defendants "engag[ed] in conduct the national [sic] consequence of which was to harass, annoy, or abuse Plaintiff in connection with the collection of a debt." (Compl. ¶ 18.) Plaintiff alleges that Defendants called her at her place of employment, "occasionally screaming at her in their efforts to extract payment." (*Id.* at ¶ 9.) She further argues that "Defendants' unauthorized communications with Plaintiff's coworkers, calls to her place of employment, [and] calls after being notified she was represented by counsel" all constitute FDCPA violations. (Mot. at 7.) Based on these allegations, which are taken as true in light of Defendants' failure to defend these claims in any way, Plaintiff has established a claim for a violation of 15 U.S.C. § 1692d.

In Count IV, Plaintiff argues that Defendants violated 15 U.S.C. §§ 1692c(a)(1)[8] and (a)(2) "by continuing to contact Plaintiff at her place of employment after being advised of the prohibition." (Compl. ¶ 19.) The violation of 15 U.S.C. § 1692c(a)(2) was raised in Count I of Plaintiff's Complaint, and is addressed above. As to the alleged violation of 15 U.S.C.

---

[8] 15 U.S.C. §§ 1692c(a)(1) states,

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location . . . .

§ 1692c(a)(1), Plaintiff has not stated a claim. This specific section of the statute prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1). For example, a debt collector shall assume that the convenient time for communicating with a consumer is between 8:00 a.m. and 9:00 p.m. *Id.* Plaintiff's Complaint contains no allegations regarding the inconvenient timing of Defendants' collection calls.[9]

Finally, Count V alleges that Defendants violated 15 U.S.C. § 1692f(1)[10] "by attempting to collect fees which were not expressly authorized by the agreement giving rise to the debt Plaintiff allegedly owed or otherwise permitted by law." (Compl. ¶ 20.) Specifically, Plaintiff alleges that Defendants added $50.00 in "fees" to the principle amount Plaintiff allegedly owed on the debt. (*Id.* at ¶ 14.) "Such fees were not authorized by the agreement giving rise to the alleged debt or otherwise permitted by law." (*Id.*) Accepting these allegations as true, Plaintiff has sufficiently stated a claim for a violation of 15 U.S.C. § 1692f(1).

Plaintiff has also satisfied the procedural requirements for the entry of default judgment. *See JTH Tax, Inc.*, 2006 WL 1982762, at *1. ACA's period for filing a responsive pleading to Plaintiff's Complaint expired on June 26, 2014. Defendant has yet to file a pleading or enter an appearance. The Clerk entered default on October 30, 2014 (ECF No. 10), and Plaintiff has satisfied the requirements for obtaining default judgment. Plaintiff's Motion states that the case

---

[9] Plaintiff's Motion asserts that Count IV alleges violations of 15 U.S.C. § 1692c(a)(3), which prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." 15 U.S.C. § 1692c(a)(3). While Plaintiff's Complaint does support such allegation, (*see* Compl. ¶¶ 8, 9), the Complaint does not allege such violation and thus is not properly considered here.

[10] 15 U.S.C. § 1692f(1) states,

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

is ripe for entry of default judgment as: (1) Defendants were sued on April 9, 2014; ACA was served on June 5, 2014, and Winters was served on June 17, 2014 (*see* Mot. Ex. A); (2) the record reveals that Defendants failed to file a responsive pleading or otherwise appear; (3) the Clerk entered default against Defendants on October 30, 2014; (4) Defendants are neither minors nor incompetent persons; (5) the Service Members Civil Relief Act does not apply to Defendants; and (6) Defendants were served with the Request for Entry of Default (*see id.* at Ex. B). (Mot. at 2.)

Plaintiff seeks actual damages, statutory damages, and attorney's fees and costs. The FDCPA permits recovery of each. *See* 15 U.S.C. § 1692k(a) (providing that a debt collector who fails to comply with the statute is liable for actual damages, statutory damages up to $1,000, and attorney's fees and costs).

With regards to Plaintiff's claim for actual damages, "[t]he FDCPA's actual damages provision also encompasses emotional distress damages." *Carter v. Countrywide Home Loans, Inc.*, No. 3:07CV651, 2009 WL 1010851, at *4 (E.D. Va. Apr. 14, 2009). However, Plaintiff has not presented any competent proof of actual damages. She alleges that she "had become fearful of losing her job due to Defendants' repeated and unauthorized calls to her place of employment" and she "suffered from nervousness and fear as a result of Defendants' repeated calls." (Mot. at 11.) She further alleges that "Defendants engaged in egregious conduct, the results of which would cause the reasonable person, including Plaintiff, to suffer from emotional distress." (*Id.*) However, apart from mere conclusory allegations, Plaintiff provides no evidence to support her request of $3,000.00 in actual damages for emotional distress and thus no award will be given. *See Coles v. Land's Towing & Recovery, Inc.*, No. 3:10-CV-00025, 2010 WL 5300892, at *3–4 (E.D. Va. Dec. 22, 2010) (in the absence of "competent proof of actual damages," no award given).

However, the Court will award statutory damages as contemplated by 15 U.S.C. § 1692k(a). The statute permits statutory damages up to $1,000. 15 U.S.C. § 1692k(a)(2)(A); *see*

*also Barnett v. Creditors Specialty Serv., Inc.*, No. 1:12cv303, 2013 WL 1629090, at *2 (W.D.N.C. Apr. 16, 2013) ("The statute provides for damages of $1,000.00 per lawsuit, not per incident."). In determining whether Plaintiff is entitled to a statutory damages award, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

Here, Plaintiff alleges that Defendants repeatedly called Plaintiff at her place of employment even after Plaintiff's employer advised Defendants that such calls were prohibited. (Compl. ¶¶ 8, 9). Defendants also continued to make direct calls to Plaintiff after being advised that she was represented by counsel. (*Id.* at ¶¶ 11, 12, 13.) Plaintiff specifically alleges two voicemails that were left by Defendants' agents—one on April 9, 2013 and one on October 7, 2013. (*Id.* at ¶¶ 12, 13.) Plaintiff further alleges that Defendants "occasionally scream[ed] at her in their efforts to extract payment." (*Id.* at ¶ 9.) With these facts in mind, the Court will award $1,000 in statutory damages.

(ii)     Attorneys' Fees

Plaintiffs who prevail in FDCPA actions are entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Attorney's fees are mandatory under the FDCPA, but the amount of the award is left to the district court's discretion. *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995).

In determining reasonable attorneys' fees, courts must first calculate the lodestar amount. *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). The lodestar amount is "the product of reasonable hours times a reasonable rate." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The lodestar amount is presumptively reasonable, but may be adjusted based on the circumstances of the case. *Id.* The Supreme Court cautions, however, that upward adjustments "are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the . . . courts."

*Id.* (internal citation and quotation marks omitted).

In determining a reasonable fee, the Fourth Circuit also directs district courts to consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) and *Allen v. United States*, 606 F.2d 432, 435 (4th Cir. 1979). *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010). The twelve factors are:

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

*Id.* (citing *Allen*, 606 F.2d at 436 n.1).

The Eastern District of Virginia requires parties requesting attorneys' fees to submit proper documentation of the number of hours each attorney spent on the case. *See EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988) ("Proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks. Fee claimants must submit documentation that reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity."). A court can reduce or deny the requested award if the requesting party does not submit the proper documentation. *Id.*

Plaintiff seeks $3,962.50 in attorney's fees and $59.95 in costs, for a total of $4,022.45. Plaintiff's lawyer's hourly rate is $300 and the paralegal/staff rate is $50. (*See* Mot. Ex. E.) Plaintiff's lawyer spent 11.45 hours on the case, for a total of $3,435.00.[11] The paralegal spent 8.55 hours on the case, for a total of $427.50. Plaintiff's counsel submits that the hourly rate is reasonable in light of the data collected from the 2007 National Law Journal billing survey,

---

[11] Additionally, Exhibit E contains .33 hours at a rate of $100 for "Comm. from Atty. Amador with Atty. Fisher re: filing of case." The exhibit charges a total amount of $100 for this work, and is included in the total calculation of $3,962.50.

which revealed that the average median billing rate for a partner in the Richmond, Virginia area is $300.00 per hour. (*See id.* at Ex. C.) Additionally, Plaintiff's counsel submits that he has previously been awarded attorney's fees based on a billing rate of $300.00 per hour in cases very similar to the instant case. (Mot. at 13) (citing cases). Finally, declarations were submitted by both Attorney Fisher and Attorney Amador in support of their request. (*Id.* at Exs. F, G.) Upon due consideration, the Court hereby GRANTS the Motion as to Plaintiff's request for attorneys' fees and costs.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Motion. Specifically, the Court GRANTS the Motion as to ACA but DENIES the Motion as to Winters. Further, the Court DENIES an award of actual damages, but GRANTS a $1,000 statutory damages award. Finally, the Court GRANTS Plaintiff's request for attorneys' fees and costs.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __10th____ day of June 2015.

12